# EXHIBIT 2

 **CT Corporation**

**Service of Process Transmittal**
06/12/2018
CT Log Number 533506516

TO:     Carol Purcell
        Endo Pharmaceuticals Inc.
        1400 Atwater Dr
        Malvern, PA 19355-8701

RE:     **Process Served in Delaware**

FOR:    Endo Pharmaceuticals Inc.  (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | City of Sandusky, Pltf. vs. PURDUE PHARMA L.P., ET AL., Dfts. // To: Endo Pharmaceuticals, Inc. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summon, Complaint |
| **COURT/AGENCY:** | ERIE COUNTY COMMON PLEAS COURT, OH Case # 2018CV0315 |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - Opioids |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/12/2018 postmarked on 06/08/2018 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 28 days after service of this summons upon you, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Leslie O. Murray MURRAY & MURRAY CO., L.P.A. 111 East Shoreline Drive Sandusky, OH 44870 419-624-3125 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/13/2018, Expected Purge Date: 06/18/2018 |
| | Image SOP |
| | Email Notification,  Jobina Jones-McDonnell  jones.jobina@endo.com |
| | Email Notification,  Helen Howlett  howlett.helen@endo.com |
| | Email Notification,  Marian Gustafson  marian.gustafson@parpharm.com |
| | Email Notification,  Carolyn Hazard  hazard.carrie@endo.com |
| | Email Notification,  Par Notice Dept  Par.noticeDept@parpharm.com |
| | Email Notification,  Carol Purcell  Purcell.Carol@endo.com |

Page 1 of  2 / PV

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
06/12/2018
CT Log Number 533506516

**TO:**  Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

**RE:**  **Process Served in Delaware**

**FOR:**  Endo Pharmaceuticals Inc.  (Domestic State: DE)

Email Notification,  Stephanie Stidham  stidham.stephanie@endo.com

Email Notification,  Sandra DiIorio  DiIorio.Sandra@endo.com

**SIGNED:**  The Corporation Trust Company
**ADDRESS:**  1209 N Orange St
Wilmington, DE 19801-1120
**TELEPHONE:**  302-658-7581

Page 2 of  2 / PV

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

If Undeliverable, Return To
LUVADA WILSON
ERIE COUNTY
CLERK OF COURTS
323 COLUMBUS AVE
SANDUSKY, OHIO 44870

USPS CERTIFIED MAIL



9214 8901 9403 8300 0006 7870 34

2018 CV 0315  /Z 000 075 324
Endo Pharmaceuticals, INC.
1209 Orange Street
WILMINGTON, DE 19801

 

US POSTAGE
$07.21⁰
First-Class
Mailed From 44870
06/08/2018
032A 0061848086

If Undeliverable, Return To
LUVADA WILSON
ERIE COUNTY
CLERK OF COURTS
323 COLUMBUS AVE
SANDUSKY, OHIO 44870

USPS CERTIFIED MAIL



9214 8901 9403 8300 0006 7870 34

2018 CV 0315   /Z 000 075 324
Endo Pharmaceuticals, INC.
1209 Orange Street
WILMINGTON, DE 19801

# COURT OF ERIE COUNTY COMMON PLEAS
# COURT JUDGE TYGH M. TONE, ERIE COUNTY

323 Columbus Ave. 3rd. Floor , Sandusky, OH 44870

## SUMMONS

RULE 4 1970 OHIO RULES OF CIVIL PROCEDURE

### 2018 CV 0315

#### Plaintiff(s):

City of Sandusky
222 Meigs Street
SANDUSKY , OH 44870

**vs.**                              **SUMMONS ON COMPLAINT**

**Certified Mail**

#### Defendant(s):

PURDUE PHARMA L.P.
2711 Centerville Road
WILMINGTON , DE 19808

PURDUE PHARMA INC.
2711 Centerville Road
WILMINGTON , DE 19808

THE PURDUE FREDERICK COMPANY,
INC.
2711 Centerville Road
WILMINGTON , DE 19808

Teva Pharmaceuticals USA, Inc.
3411 Silverside Road
WILMINGTON , DE 19808

Cephalon, INC.
3411 Silverside Road
WILMINGTON , DE 19808

Johnson & Johnson
1 Johnson And Johnson Plaza
NEW BRUNSWICK , NJ 08933

Allergan PLC F/K/A Actavis PLC
4400 Easton Commons Way, Suite 125
COLUMBUS , OH 43215

Watson Laboratories, INC.
119 E. Court Street
CINCINNATI , OH 45202

Actavis LLC
119 E. Court Street
CINCINNATI , OH 45202

Actavis Pharma, INC. F/K/A Watson
Pharma, INC.
119 E. Court Street
CINCINNATI , OH 45202

McKesson Corporation
50 West Broad Street, Suite 1330
COLUMBUS , OH 43215

Cardinal Health, INC.
7000 Cardinal Place
DUBLIN , OH 43017

Amerisourcebergen Corporation
4400 Easton Commons Way, Suite 125
COLUMBUS, OH 43219

Amerisourcebergen Corporation
1300 Morris Drive
CHESTERBROOK , PA 19087

Actavis, INC. F/K/A Watson
Pharmaceuticals, INC.
400 Interpace Parkway
PARSIPPANY , NJ 07054

Janssen Pharmaceuticals, INC.
116 Pine Street, Suite 320
HARRISBURG , PA 17101

Janssen Pharmaceutica, INC. N/K/A
116 Pine Street, Suite 320
HARRISBURG , PA 17101

Ortho-McNeil-Janssen Pharmaceuticals,
INC. N/K/A
116 Pine Street, Suite 320
HARRISBURG , PA 17101

Endo Health Solutions INC.
1209 Orange Street
WILMINGTON , DE 19801

Endo Pharmaceuticals, INC.
1209 Orange Street
WILMINGTON , DE 19801

Russell Portenoy
39 Broadway, 1st Floor
NEW YORK , NY 10006

Perry Fine
615 Arapeen Way, Suite 155
SALT LAKE CITY , UT 84132

Scott Fishman
2221 Stockton Blvd.
SACRAMENTO , CA 95817

Lynn Webster
1255 E. 3900 S
SALT LAKE CITY , UT 84124

### Party(s) in Interest:

To the above named defendant(s):

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff(s) named herein.

You are required to serve upon the plaintiff's attorney, or upon the plaintiffs if he/she has no attorney of record, a copy of your answer to the complaint within **28 days** after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on Plaintiff's Attorney.

The name and address of the plaintiff's attorney is as follows:

Leslie O Murray
Murray & Murray Co., LPA
111 East Shoreline Drive
Sandusky, OH 44870

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

**LUVADA S WILSON, Clerk**

June 6, 2018

/s/ Gwendolyn A. Stovall

_____

By Gwendolyn A. Stovall, Deputy.

 **CT Corporation**

**Service of Process Transmittal**
06/12/2018
CT Log Number 533503456

TO: Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

RE: **Process Served in Delaware**

FOR: Endo Health Solutions Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CITY OF SANDUSKY, Pltf. vs. PURDUE PHARMA L.P., et al., Dfts. // To: Endo Health Solutions Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | ERIE COUNTY - COURT OF COMMON PLEAS, OH<br>Case # 2018CV0315 |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - opioid |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/12/2018 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 28 days after service, exclusive of the day of service(Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Leslie O Murray<br>Murray & Murray Co., LPA<br>111 East Shoreline Drive<br>Sandusky, OH 44870 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/13/2018, Expected Purge Date: 06/18/2018 |
| | Image SOP |
| | Email Notification,  Jobina Jones-McDonnell  jones.jobina@endo.com |
| | Email Notification,  Helen Howlett  howlett.helen@endo.com |
| | Email Notification,  Marian Gustafson  marian.gustafson@parpharm.com |
| | Email Notification,  Carolyn Hazard  hazard.carrie@endo.com |
| | Email Notification,  Par Notice Dept  Par.noticeDept@parpharm.com |
| | Email Notification,  Carol Purcell  Purcell.Carol@endo.com |
| | Email Notification,  Stephanie Stidham  stidham.stephanie@endo.com |

Page 1 of  2 / DS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
06/12/2018
CT Log Number 533503456

**TO:**  Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

**RE:**  **Process Served in Delaware**

**FOR:**  Endo Health Solutions Inc.  (Domestic State: DE)

Email Notification,  Sandra DiIorio  DiIorio.Sandra@endo.com

**SIGNED:**  The Corporation Trust Company
**ADDRESS:**  1209 N Orange St
Wilmington, DE 19801-1120
**TELEPHONE:**  302-658-7581

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**CERTIFIED MAIL**

If Undeliverable, Return To
LUVADA WILSON
ERIE COUNTY
CLERK OF COURTS
323 COLUMBUS AVE
SANDUSKY, OHIO 44870

USPS CERTIFIED MAIL

9214 8901 9403 8300 0006 7870 27

2018 CV 0315    /Z 000 075 323
Endo Health Solutions INC.
1209 Orange Street
WILMINGTON, DE 19801





US POSTAGE
**$07.21⁹**
First-Class
Mailed From 44870
08/08/2018
032A 0061848086

If Undeliverable, Return To
LUVADA WILSON
ERIE COUNTY
CLERK OF COURTS
323 COLUMBUS AVE
SANDUSKY, OHIO 44870

USPS CERTIFIED MAIL



9214 8901 9403 8300 0006 7870 27

2018 CV 0315   /Z 000 075 323
Endo Health Solutions INC.
1209 Orange Street
WILMINGTON, DE 19801

# COURT OF ERIE COUNTY COMMON PLEAS

# COURT JUDGE TYGH M. TONE, ERIE COUNTY

323 Columbus Ave. 3rd. Floor  , Sandusky, OH 44870

## SUMMONS

RULE 4 1970 OHIO RULES OF CIVIL PROCEDURE

## 2018 CV 0315

### Plaintiff(s):

City of Sandusky
222 Meigs Street
SANDUSKY , OH 44870

vs.

## SUMMONS ON COMPLAINT

## Certified Mail

### Defendant(s):

PURDUE PHARMA L.P.
2711 Centerville Road
WILMINGTON , DE 19808

PURDUE PHARMA INC.
2711 Centerville Road
WILMINGTON , DE 19808

THE PURDUE FREDERICK COMPANY,
INC.
2711 Centerville Road
WILMINGTON , DE 19808

Teva Pharmaceuticals USA, Inc.
3411 Silverside Road
WILMINGTON , DE 19808

Cephalon, INC.
3411 Silverside Road
WILMINGTON , DE 19808

Johnson & Johnson
1 Johnson And Johnson Plaza
NEW BRUNSWICK , NJ 08933

Allergan PLC F/K/A Actavis PLC
4400 Easton Commons Way, Suite 125
COLUMBUS , OH 43215

Watson Laboratories, INC.
119 E. Court Street
CINCINNATI , OH 45202

Actavis LLC
119 E. Court Street
CINCINNATI , OH 45202

Actavis Pharma, INC. F/K/A Watson
Pharma, INC.
119 E. Court Street
CINCINNATI , OH 45202

McKesson Corporation
50 West Broad Street, Suite 1330
COLUMBUS , OH 43215

Cardinal Health, INC.
7000 Cardinal Place
DUBLIN , OH 43017

Amerisourcebergen Corporation
4400 Easton Commons Way, Suite 125
COLUMBUS , OH 43219

Amerisourcebergen Corporation
1300 Morris Drive
CHESTERBROOK , PA 19087

Actavis, INC. F/K/A Watson
Pharmaceuticals, INC.
400 Interpace Parkway
PARSIPPANY , NJ 07054

Janssen Pharmaceuticals, INC.
116 Pine Street, Suite 320
HARRISBURG , PA 17101

Janssen Pharmaceutica, INC. N/K/A
116 Pine Street, Suite 320
HARRISBURG , PA 17101

Ortho-McNeil-Janssen Pharmaceuticals,
INC. N/K/A
116 Pine Street, Suite 320
HARRISBURG , PA 17101

Endo Health Solutions INC.
1209 Orange Street
WILMINGTON , DE 19801

Endo Pharmaceuticals, INC.
1209 Orange Street
WILMINGTON , DE 19801

Russell Portenoy
39 Broadway, 1st Floor
NEW YORK , NY 10006

Perry Fine
615 Arapeen Way, Suite 155
SALT LAKE CITY , UT 84132

Scott Fishman
2221 Stockton Blvd.
SACRAMENTO , CA 95817

Lynn Webster
1255 E. 3900 S
SALT LAKE CITY , UT 84124

### Party(s) in Interest:

To the above named defendant(s):

You are hereby summoned that a complaint (a copy of which is hereto attached and made
a part hereof) has been filed against you in this court by the plaintiff(s) named herein.

You are required to serve upon the plaintiff's attorney, or upon the plaintiffs if he/she has
no attorney of record, a copy of your answer to the complaint within **28 days** after service
of this summons upon you, exclusive of the day of service. Said answer must be filed with
this court within three days after service on Plaintiff's Attorney.

The name and address of the plaintiff's attorney is as follows:

Leslie O Murray
Murray & Murray Co., LPA
111 East Shoreline Drive
Sandusky, OH 44870

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

**LUVADA S WILSON, Clerk**

June 6, 2018

/s/ Gwendolyn A. Stovall

_____

By Gwendolyn A. Stovall, Deputy.

**E-FILED**
**COMMON PLEAS COURT**
**ERIE COUNTY, OHIO**

**2018 Jun-6 PM 1:36**

**LUVADA S WILSON**
**CLERK OF COURTS**

**2018 CV 0315**

**Tygh M Tone**

IN THE COURT OF COMMON PLEAS
ERIE COUNTY

| | | |
|---|---|---|
| CITY OF SANDUSKY | ) | Case No.: |
| 222 Meigs Street | ) | |
| Sandusky, OH 44870 | ) | Judge |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | **JURY DEMAND** |
| PURDUE PHARMA L.P. | ) | |
| c/o The Prentice Hall Corporation | ) | |
| 2711 Centerville Road | ) | |
| Wilmington, DE 19808 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PURDUE PHARMA INC. | ) | |
| c/o The Prentice Hall Corporation | ) | |
| 2711 Centerville Road | ) | |
| Wilmington, DE 19808 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE PURDUE FREDERICK COMPANY, | ) | |
| INC. | ) | |
| c/o The Prentice Hall Corporation | ) | |
| 2711 Centerville Road | ) | |
| Wilmington, DE 19808 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TEVA PHARMACEUTICALS USA, INC. | ) | |
| c/o Corporate Creations Network Inc. | ) | |
| 3411 Silverside Road | ) | |
| Wilmington, DE 19808 | ) | |
| | ) | |
| and | ) | |
| | ) | |

CEPHALON, INC.                              )
c/o Corporate Creations Network Inc.        )
3411 Silverside Road                        )
Wilmington, DE 19808                        )
                                            )
            and                             )
                                            )
JOHNSON & JOHNSON                           )
One Johnson & Johnson Plaza                 )
New Brunswick, NJ 08933                     )
                                            )
            and                             )
                                            )
JANSSEN PHARMACEUTICALS, INC.               )
116 Pine Street, Suite 320                  )
Harrisburg, PA 17101                        )
                                            )
            and                             )
                                            )
JANSSEN PHARMACEUTICA, INC.                 )
N/K/A                                       )
JANSSEN PHARMACEUTICALS, INC.               )
116 Pine Street, Suite 320                  )
Harrisburg, PA 17101                        )
                                            )
            and                             )
                                            )
ORTHO-MCNEIL-JANSSEN                        )
PHARMACEUTICALS, INC. N/K/A                 )
JANSSEN PHARMACEUTICALS, INC.               )
116 Pine Street, Suite 320                  )
Harrisburg, PA 17101                        )
                                            )
            and                             )
                                            )
ENDO HEALTH SOLUTIONS INC.                  )
c/o The Corporation Trust Co.               )
1209 Orange Street                          )
Wilmington, DE 19801                        )
                                            )
            and                             )
                                            )
ENDO PHARMACEUTICALS, INC.                  )
c/o The Corporation Trust Co.               )
1209 Orange Street                          )
Wilmington, DE 19801                        )

2

and      )
       )
       )
ALLERGAN PLC F/K/A ACTAVIS PLC )
CT Corporation System   )
4400 Easton Commons Way, Suite 125 )
Columbus, OH 43215   )
       )
and      )
       )
ACTAVIS, INC. F/K/A WATSON  )
PHARMACEUTICALS, INC.  )
400 Interpace Pkwy.   )
Parsippany, NJ 07054-1118  )
       )
and      )
       )
WATSON LABORATORIES, INC. )
Corporate Creations Network Inc.  )
119 E. Court Street   )
Cincinnati, OH 45202   )
       )
and      )
       )
ACTAVIS LLC    )
Corporate Creations Network Inc.  )
119 E. Court Street   )
Cincinnati, OH 45202   )
       )
and      )
       )
ACTAVIS PHARMA, INC. F/K/A )
WATSON     )
PHARMA, INC.    )
Corporate Creations Network Inc.  )
119 E. Court Street   )
Cincinnati, OH 45202   )
       )
and      )
       )
MCKESSON CORPORATION  )
50 West Broad Street, Suite 1330  )
Columbus, OH 43215   )
       )
and      )
       )

3

CARDINAL HEALTH, INC.                )
7000 Cardinal Place                  )
Dublin, OH 43017                     )
                                     )
            and                      )
                                     )
AMERISOURCEBERGEN                    )
CORPORATION                          )
CT Corporation System                )
4400 Easton Commons Way, Suite 125   )
Columbus, OH 43219                   )
                                     )
AMERISOURCEBERGEN                    )
CORPORATION                          )
1300 Morris Drive                    )
Chesterbrook, PA 19087               )
                                     )
            and                      )
                                     )
RUSSELL PORTENOY                     )
39 Broadway, 1st Floor               )
New York, NY 10006                   )
                                     )
            and                      )
                                     )
PERRY FINE                           )
615 Arapeen Way, Suite 155           )
Salt Lake City, UT 84132             )
                                     )
            and                      )
                                     )
SCOTT FISHMAN                        )
2221 Stockton Blvd.                  )
Sacramento, CA 95817                 )
                                     )
            and                      )
                                     )
LYNN WEBSTER                         )
PRA Health Sciences                  )
1255 E. 3900 S
Salt Lake City, UT 84124

            Defendants.

4

Plaintiff, the City of Sandusky, Ohio ("Plaintiff," "City," or "City of Sandusky"), by and through its attorneys Leslie O. Murray and John T Murray, Murray & Murray Co., L.P.A. for its Complaint against Defendants Purdue Pharma L.P.; Purdue Pharma Inc.; the Purdue Frederick Company, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals, Inc.; Allergan plc f/k/a Actavis plc; Actavis Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc. (collectively, "Manufacturers" or "Defendants"); McKesson Corporation, Cardinal Health Inc., AmerisourceBergen Corporation (Collectively, "Distributor Defendants" or "Defendants") Russell Portenoy; Perry Fine; Scott Fishman; and Lynn Webster, (collectively, "Physicians" or "Defendants") alleges as follows:

## INTRODUCTION

1.      The City of Sandusky spends millions of dollars each year to provide and pay for health care, services, pharmaceutical care and other necessary services and programs on behalf of residents of its City whom are indigent or otherwise eligible for services, including payments through services such as Medicaid for prescription opioid painkillers ("opioids") which are manufactured, marketed, promoted, sold, and/or distributed by the Defendants.

2.      The City of Sandusky also provides a wide range of other services to its residents, including law enforcement, services for families and children, and public assistance.

3.      In recent years, the City of Sandusky has been forced to expend exorbitant amounts of money, described further below, due to what is commonly referred to as the "opioid epidemic" and as a direct result of the actions of Defendants.

5

4. Defendants knew that opioids were effective treatments for short-term post-surgical and trauma-related pain, and for palliative (end-of-life) care. Yet they also knew—and had known for years—that opioids were addictive and subject to abuse, particularly when used long-term for chronic non-cancer pain (pain lasting three months or longer, hereinafter referred to as "chronic pain"), and should not be used except as a last-resort.

5. Defendants further knew—and had known for years—that with prolonged use, the effectiveness of opioids wanes, requiring increases in doses and markedly increasing the risk of significant side effects and addiction.

6. Defendants also knew that controlled studies of the safety and efficacy of opioids were limited to short-term use (not longer than 90 days), and in managed settings (e.g., hospitals), where the risk of addiction and other adverse outcomes was much less significant.

7. Indeed, the U.S. Food and Drug Administration ("FDA") has expressly recognized that there have been no long-term studies demonstrating the safety and efficacy of opioids for long-term use.

8. Prescription opioids, which include well-known brand-name drugs like OxyContin and Percocet, and generics like oxycodone and hydrocodone, are narcotics. They are derived from or possess properties similar to opium and heroin, which is why they are regulated as controlled substances. Like heroin, prescription opioids work by binding to receptors on the spinal cord and in the brain, dampening the perception of pain. Opioids also can create a euphoric high, which can make them addictive. At certain doses, opioids can slow the user's breathing, causing respiratory depression and, ultimately, death.

9. In order to expand the market for opioids and realize blockbuster profits, Defendants needed to create a sea change in the medical and public perception that would permit

6

the use of opioids not just for acute and palliative care, but also for long periods of time to treat more common aches and pains, like lower back pain, arthritis, and headaches.

10.     Defendants, through a sophisticated and highly deceptive and unfair marketing campaign that began in the late 1990s, deepened around 2006, and continues through the present, set out to, and did, reverse the popular and medical understanding of opioids. Chronic opioid therapy—the prescribing of opioids to treat chronic pain long term—is now commonplace.

11.     To accomplish this reversal, Defendants spent hundreds of millions of dollars: (a) developing and disseminating seemingly truthful scientific and educational materials and advertising that misrepresented the risks, benefits, and superiority of opioids used long-term to treat chronic pain (b) deploying sales representatives who visited doctors and other prescribers and delivered misleading messages about the use of opioids (c) recruiting prescribing physicians as paid speakers as a means of both securing those physicians' future "brand loyalty" and extending their reach to the physicians' peers; (d) funding, assisting, encouraging, and directing certain doctors, known as "key opinion leaders" ("KOLs"), not only to deliver scripted talks, but also to draft misleading studies, present continuing medical education programs ("CMEs") that were deceptive and lacked balance, and serve on the boards and committees of professional societies and patient advocacy groups that delivered messages and developed guidelines supporting chronic opioid therapy; and (e) funding, assisting, directing, and encouraging seemingly neutral and credible professional societies and patient advocacy groups (referred to hereinafter as "Front Groups" that developed educational materials and treatment guidelines that were then distributed by Defendants, which urged doctors to prescribe, and patients to use, opioids long-term to treat chronic pain.

7

12.     These efforts, executed, developed, supported, and directed by Defendants, were designed not to present a fair view of how and when opioids could be safely and effectively used, but rather to convince doctors and patients that the benefits of using opioids to treat chronic pain outweighed the risks and that opioids could be used safely by most patients. Defendants and the third parties whom they recruited and supported, all profited handsomely through their dissemination of these deceptions. KOLs and Front Groups saw their stature in the medical community elevated dramatically due to Defendants' funding, and Defendants saw an equally dramatic rise in their revenues.

13.     Defendants' efforts were wildly successful. The United States is now awash in opioids. In 2012, health care providers wrote 259 million prescriptions for opioid painkillers—enough to medicate every adult in America around the clock for a month. Twenty percent of all doctors' visits in 2010 resulted in the prescription of an opioid, nearly double the rate in 2000. Opioids—once a niche drug—are now the most prescribed class of drugs—more than blood pressure, cholesterol, or anxiety drugs. While Americans represent only 4.6% of the world's population, they consume 80% of the opioids supplied around the world and 99% of the global hydrocodone supply. Together, opioids generated $8 billion in revenue for drug companies in 2012.

14.     It was Defendants' marketing—and not any medical breakthrough—that rationalized prescribing opioids for chronic pain and opened the floodgates of opioid use and abuse. The result has been catastrophic.

15.     According to the Ohio Department of Health, in 2007 unintentional drug poisoning became the leading cause of injury death in Ohio, surpassing motor vehicle accidents

for the first time in history. From 2000 to 2015, Ohio's death rate due to unintentional drug poisonings increased 642 percent, which was "driven largely by opioid related overdoses".

16.     The dramatic increase in opioid prescriptions to treat common chronic pain conditions has resulted in a population of addicts who seek drugs from doctors. When turned down by one physician, many of these addicts deploy increasingly desperate tactics—including doctor-shopping, use of aliases, and criminal means—to satisfy their cravings.

17.     Efforts by doctors to reverse course for a chronic pain patient already on opioids long-term include managing the physical suffering and psychological distress a patient endures while withdrawing from the drugs. This process is often thwarted by a secondary criminal market well-stocked by a pipeline of drugs that is diverted to supply them. Even though they never would have prescribed opioids in the first place, many doctors feel compelled to continue prescribing opioids to patients who have become dependent on them.

18.     Opioid abuse has not displaced heroin, but rather triggered a resurgence in its use, imposing additional burdens on the City and local agencies that address heroin use and addiction. According to the CDC, the percentage of heroin users who also use opioid pain relievers rose from 20.7% in 2002-2004 to 45.2% in 2011-2013. Heroin produces a very similar high to prescription opioids, but is often cheaper. While a single opioid pill may cost $10-$15 on the street, users can obtain a bag of heroin, with multiple highs, for the same price. It is hard to imagine the powerful pull that would cause a law-abiding, middle-aged person who started on prescription opioids for a back injury to turn to buying, snorting, or injecting heroin, but that is the dark side of opioid abuse and addiction.

19.     Countless City residents suffer from chronic pain, which takes an enormous toll on their health, their lives, and their families. These residents deserve both appropriate care and

the ability to make decisions based on accurate and complete information about treatment risks and benefits. But Defendants' deceptive and unfair marketing campaign deprived City residents and their doctors of the ability to make informed medical decisions and, instead, caused important, sometimes life-or-death decisions to be made based not on science, but on hype. Defendants deprived patients, their doctors, and health care payors of the chance to exercise informed judgment and subjected them to enormous costs and suffering.

20.     Defendants' actions are not permitted or excused by the fact that their labels (with the exception of Cephalon's labels for Fentora and Actiq) may have allowed, or did not exclude, the use of opioids for chronic non-cancer pain. The FDA's approval did not give Defendants license to misrepresent the risks, benefits, or superiority of opioids. Indeed, what makes Defendants' efforts particularly nefarious—and dangerous—is that, unlike other prescription drugs marketed unlawfully in the past, opioids are highly addictive controlled substances. Defendants deceptively and unfairly engaged a patient base that—physically and psychologically—could not turn away from their drugs, many of whom were not helped by the drugs or were profoundly damaged by them.

21.     Nor is Defendants' causal role broken by the involvement of doctors. Defendants' marketing efforts were both ubiquitous and highly persuasive; their deceptive messages tainted virtually every source doctors could rely on for information and prevented them from making informed treatment decisions. Defendants targeted not only pain specialists, but also primary care physicians (PCPs), nurse practitioners, physician assistants, and other non-pain specialists who were even less likely to be able to assess the companies' misleading statements. Defendants were also able to callously manipulate what doctors wanted to believe—namely, that

opioids represented a means of relieving their patients' suffering and of practicing medicine more compassionately.

22.     Defendants' marketing campaign has been extremely harmful and has cost American lives – including lives of residents of the City of Sandusky. Deaths from prescription opioids have quadrupled since 1999. From 2000 to 2014 nearly 500,000 people died from such overdoses; seventy-eight Americans die everyday from opioid overdoses.

23.     The rising numbers of persons addicted to opioids have led not only to an increase in health care costs to the City, and specifically the Plaintiff, but also a major increase in issues such as drug abuse, diversion, and crimes related to obtaining opioid medications. The City of Sandusky has been severely and negatively impacted due to the fraudulent misrepresentations and omissions by Defendants regarding the use and risk related to opioids. In fact, Defendants have been and continue to be aware of the high levels of diversion of their product.

24.     Due to the conduct of the Defendants, the commission of criminal acts have been undertaken not only by individuals seeking to obtain opioids, but by physicians themselves. The actions of Defendants have created an environment where select physicians have sought to profit at the expense of their patients who become addicted to opioid pain medications, often accepting cash payments and ordering unnecessary medical tests, again at the expense of the City of Sandusky.

25.     As a direct and foreseeable consequence of Defendants' wrongful conduct, Plaintiff has been required to spend millions of dollars each year in its efforts to combat the public nuisance created by Defendants' deceptive marketing campaign. Plaintiff has incurred and continues to incur costs related to opioid addiction and abuse, including, but not limited to, health care costs, criminal justice and victimization costs, social costs, and lost productivity

11

costs. Defendants' misrepresentations regarding the safety and efficacy of long-term opioid use proximately caused injury to Plaintiff and its residents.

## JURISDICTION AND VENUE

Defendants systematically manufactured for distribution or distributed opioid medications throughout Ohio including Erie County and specifically Sandusky.

## PARTIES

### A. Plaintiff.

26.     The City of Sandusky is located within Erie County. Per the 2010 census, its population was 25,793. Plaintiff provides a wide range of services on behalf of its residents, including services for families and children, public health, public assistance, law enforcement, and emergency care. As mentioned above, Plaintiff also partially funds the insurance plan for its employees.

### B. Defendants.

27.     Purdue Pharma L.P. is a limited partnership organized under the law of Delaware. Purdue Pharma Inc. is a Delaware corporation with its principal place of business in Stamford, Connecticut, and The Purdue Frederick Company, Inc. is a Delaware corporation with its principal place of business in Stamford, Connecticut (collectively, "Purdue").

28.     Purdue is primarily engaged in the manufacture, promotion, and distribution of opioids nationally and in the City of Sandusky, including the following:

> a. OxyContin (oxycodone hydrochloride extended release) is a Schedule II opioid agonist tablet first approved in 1995 and indicated for the "management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are

inadequate." Prior to April 2014, OxyContin was indicated for the "management of moderate to severe pain when a continuous, around-the-clock opioid analgesic is needed for an extended period of time."

b. MS Contin (morphine sulfate extended release) is a Schedule II opioid agonist tablet first approved in 1987 and indicated for the "management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate." Prior to April 2014, MS Contin was indicated for the "management of moderate to severe pain when a continuous, around-the-clock opioid analgesic is needed for an extended period of time."

c. Dilaudid (hydromorphone hydrochloride) is a Schedule II opioid agonist first approved in 1984 (injection) and 1992 (oral solution and tablet) and indicated for the "management of pain in patients where an opioid analgesic is appropriate."

d. Dilaudid-HP (hydromorphone hydrochloride) is a Schedule II opioid agonist injection first approved in 1984 and indicated for the "relief of moderate-to-severe pain in opioid-tolerant patients who require larger than usual doses of opioids to provide adequate pain relief."

e. Butrans (buprenorphine) is a Schedule III opioid partial agonist transdermal patch first approved in 2010 and indicated for the "management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate." Prior to April 2014, Butrans was indicated for the "management of moderate to severe pain when a

continuous, around-the-clock opioid analgesic is needed for an extended period of time."

f.  Hysingla ER (hydrocodone bitrate) is a Schedule II opioid agonist tablet first approved in 2014 and indicated for the management of pain severe enough to require daily, around-the-clock, long term opioid treatment and for which alternative treatment options are inadequate.

g.  Targiniq ER (oxycodone hydrochloride and naloxone hydrochloride) is a Schedule II combination product of oxycodone, an opioid agonist, and naloxone, an opioid antagonist, first approved in 2014 and indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.

29.  OxyContin is Purdue's largest-selling opioid.  Since 2009, Purdue's national annual sales of OxyContin have fluctuated between $2.47 billion and $2.99 billion, up four-fold from 2006 sales of $800 million.  OxyContin constitutes roughly 30% of the entire market for analgesic drugs (i.e., painkillers).

30.  In 2007, Purdue settled criminal and civil charges against it for misbranding OxyContin and agreed to pay the United States $635 million—at the time one of the largest settlements with a drug company for marketing misconduct.  Pursuant to its settlement, Purdue operated under a Corporate Integrity Agreement with the Office of Inspector General of the U.S. Department of Health and Human Services, which required the company, *inter alia*, to ensure that its marketing was fair and accurate, and to monitor and report on its compliance with the Agreement.

31.     Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation with its principal place of business in North Whales, Pennsylvania. Teva USA is a wholly owned subsidiary of Teva Pharmaceutical Industries, Ltd. ("Teva Ltd.") an Israeli corporation.

32.     Defendant Cephalon, Inc. is a Delaware corporation with its principal place of business in Frazer, Pennsylvania. In 2011, Teva Ltd. acquired Cephalon, Inc.

33.     Teva USA and Cephalon, Inc. work together closely to market and sell Cephalon products in the United States. Teva USA conducts Teva Ltd.'s sales and marketing activities for Cephalon in the United States and has done so since Teva Ltd.'s October 2011 acquisition of Cephalon. Teva USA holds out Actiq and Fentora as Teva products to the public. Teva USA sells all former Cephalon branded products through its "specialty medicines" division. The FDA approved prescribing information and medication guide, which is distributed with Cephalon opioids marketed and sold in Sandusky, discloses that the guide was submitted by Teva USA, and directs physicians to contact Teva USA to report adverse events. (Teva USA and Cephalon, Inc. collectively are referred to herein as "Cephalon.")

34.     Cephalon has been in the business of manufacturing, selling, and distributing the following opioids, nationally and in Sandusky:

  a.  Actiq (fentanyl citrate) is a Schedule II opioid agonist lozenge (lollipop) first approved in 1998 and indicated for the "management of breakthrough cancer pain in patients 16 years of age and older who are already receiving and who are tolerant to opioid therapy for their underlying persistent cancer pain."

  b.  Fentora (fentanyl citrate) is a Schedule II opioid agonist buccal tablet (similar to plugs of smokeless tobacco) first approved in 2006 and indicated for the

15

> "management of breakthrough pain in cancer patients 18 years of age and
> older who are already receiving and who are tolerant to around-the-clock
> opioid therapy for their underlying persistent cancer pain."

35. In November 1998, the FDA granted restricted marketing approval for Actiq, limiting its lawful promotion to cancer patients experiencing pain. The FDA specified that Actiq should not be marketed for off-label uses, stating that the drug must be prescribed solely to cancer patients. In 2008, Cephalon pleaded guilty to a criminal violation of the Federal Food, Drug and Cosmetic Act for its misleading promotion of Actiq and two other drugs, and agreed to pay $425 million in fines, damages, and penalties.

36. Teva USA was in the business of selling generic opioids, including a generic form of OxyContin from 2005 through 2009 nationally and with the City of Sandusky.

37. On September 29, 2008, Cephalon entered into a five-year Corporate Integrity Agreement with the Office of Inspector General of the U.S. Department of Health and Human Services. The agreement, *inter alia*, required Cephalon to send doctors a letter advising them of the settlement terms and gave them a means to report questionable conduct of its sales representatives; disclose payments to doctors on its web site; and regularly certify that the company has an effective compliance program.

38. Janssen Pharmaceuticals, Inc. is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey, and is a wholly owned subsidiary of Johnson & Johnson, a New Jersey corporation with its principal place of business in New Brunswick, New Jersey. Janssen Pharmaceuticals, Inc. was formerly known as Ortho-McNeil-Janssen Pharmaceuticals, Inc., which in turn was formerly known as Janssen Pharmaceuticals Inc. Defendant Ortho-McNeil-Janssen Pharmaceuticals, Inc., now known as Janssen Pharmaceuticals,

16

Inc., is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey. Janssen Pharmaceuticals, Inc., now known as Janssen Pharmaceuticals Inc., is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey. Johnson & Johnson is the only company that owns more than 10% of Janssen Pharmaceuticals, Inc.'s stock, and it corresponds with the FDA regarding Janssen's products. Upon information and belief, Johnson & Johnson controls the sale and development of Janssen Pharmaceutical's drugs, and Janssen Pharmaceuticals, Inc.'s profits inure to Johnson & Johnson's benefit. (Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Janssen Pharmaceuticals, Inc., and Johnson & Johnson collectively are referred to herein as "Janssen.")

39.     Janssen manufactures, sells, and distributes a range of medical devices and pharmaceutical drugs in Sandusky and the rest of the nation, including Duragesic (fentanyl), which is a Schedule II opioid agonist transdermal patch first approved in 1990 and indicated for the "management of pain in opioid-tolerant patients, severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate."

40.     Until January 2015, Janssen also developed, marketed, and sold Nucynta and Nucynta ER:

> a. Nucynta ER (tapentadol extended release) is a Schedule II opioid agonist tablet first approved in 2011 and indicated for the "management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate." Prior to April 2014, Nucynta ER was indicated for the "management of moderate to severe chronic pain in adults [and] neuropathic pain associated with diabetic peripheral neuropathy (DPN) in adults." The DPN indication was added in August 2012.

      b. Nucynta (tapentadol) is a Schedule II opioid agonist tablet and oral solution first approved in 2008 and indicated for the "relief of moderate to severe acute pain in patients 18 years of age or older."

41.     Together, Nucynta and Nucynta ER accounted for $172 million in sales in 2014. Prior to 2009, Duragesic accounted for at least $1 billion in annual sales.

42.     Endo Health Solutions Inc. is a Delaware corporation with its principal place of business in Malvern, Pennsylvania. Endo Pharmaceuticals, Inc. is a wholly-owned subsidiary of Endo Health Solutions Inc. and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania. (Endo Health Solutions Inc. and Endo Pharmaceuticals, Inc. collectively are referred to herein as "Endo.")

43.     Endo develops, markets, and sells prescription drugs, including the following opioids, in the City of Sandusky and nationally:

      a. Opana ER (oxymorphone hydrochloride extended release) is a Schedule II opioid agonist tablet first approved in 2006 and indicated for the "management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate." Prior to April 2014, Opana ER was indicated for the "relief of moderate to severe pain in patients requiring continuous, around-the-clock opioid treatment for an extended period of time."

      b. Opana (oxymorphone Hydrochloride) is a Schedule II opioid agonist tablet first approved in 2006 and indicated for the "relief of moderate to severe acute pain where the use of an opioid is appropriate."

      c.  Percodan (oxycodone hydrochloride and aspirin) is a Schedule II opioid agonist tablet first approved in 1950 and first marketed by Endo in 2004 and indicated for the "management of moderate to moderately severe pain."

      d.  Percocet (oxycodone hydrochloride and acetaminophen) is a Schedule II opioid agonist tablet first approved in 1999 and first marketed by Endo in 2006 and indicated for the "relief of moderate to moderately severe pain."

44.    Opioids made up roughly $403 million of Endo's overall revenues of $3 billion in 2012. Opana ER yielded revenue of $1.15 billion from 2010 to 2013, and alone accounted for 10% of Endo's total revenue in 2012. Endo also manufactures and sells generic opioids nationally and in the City of Sandusky, both itself and through its subsidiary, Qualitest Pharmaceuticals, Inc., including generic oxycodone, oxymorphone, hydromorphone, and hydrocodone products.

45.    Allergan PLC is a public limited company incorporated in Ireland with its principal place of business in Dublin, Ireland. Actavis PLC acquired Allergan PLC in March 2015, and the combined company changed its name to Allergan PLC in March 2015. Prior to that, Watson Pharmaceuticals, Inc. acquired Actavis, Inc. in October 2012; the combined company changed its name to Actavis, Inc. in January 2013 and then to Actavis plc in October 2013. Watson Laboratories, Inc. is a Nevada corporation with its principal place of business in Corona, California, and is a wholly owned subsidiary of Allergan PLC (f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.). Actavis Pharma, Inc. (f/k/a Actavis, Inc.) is a Delaware corporation with its principal place of business in New Jersey, and was formerly known as Watson Pharma, Inc. Actavis LLC is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey. Each of these defendants is owned by Allergan plc,

which uses them to market and sell its drugs in the United States. Upon information and belief, Allergan plc exercises control over these marketing and sales efforts, and profits from the sale of Allergan/Actavis products ultimately inure to its benefit. (Allergan plc, Actavis plc, Actavis, Inc., Actavis LLC, Actavis Pharma, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc., and Watson Laboratories, Inc. hereinafter collectively are referred to as "Actavis.")

46.     Actavis engages in the business of marketing and selling opioids in Sandusky and across the country, including the branded drugs Kadian and Norco, a generic version of Kadian, and generic versions of Duragesic and Opana. Kadian (morphine sulfate extended release) is a Schedule II opioid agonist capsule first approved in 1996 and indicated for the "management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate." Prior to April 2014, Kadian was indicated for the "management of moderate to severe pain when a continuous, around-the-clock opioid analgesic is needed for an extended period of time." Actavis acquired the rights to Kadian from King Pharmaceuticals, Inc., on December 30, 2008 and began marketing Kadian in 2009.

47.     Defendant McKesson Corporation ("McKesson") is a Delaware corporation with its principal place of business in San Francisco, California.

48.     Defendant McKesson had a net income in excess of $1.5 Billion in 2015.

49.     Defendant McKesson distributes pharmaceuticals to retail pharmacies and institutional providers to customers in all 50 states, including the State of Ohio and the City of Sandusky.

50.     Upon information and belief, defendant McKesson is a pharmaceutical distributor licensed to do business in Ohio.

51.     Defendant McKesson is the largest pharmaceutical distributor in North America.

52.     Upon information and belief, McKesson delivers one-third of all pharmaceuticals used in North America.

53.     Defendant McKesson does substantial business in the State of Ohio and the City of Sandusky.

54.     Defendant Cardinal Health Inc. ("Cardinal") is an Ohio Corporation with its principal place of business in Dublin, Ohio.

55.     Defendant Cardinal distributes pharmaceuticals to retail pharmacies and institutional providers to customers in all 50 states, including Ohio and the City of Sandusky.

56.     Upon information and belief, defendant Cardinal is a pharmaceutical distributor licensed to do business in Ohio.

57.     Defendant Cardinal does substantial business in the State of Ohio and the City of Sandusky.

58.     Upon information and belief, defendant Cardinal is one of the largest distributors of opioid pain medications in the Country, including the State of Ohio.

59.     Upon information and belief, Defendant AmerisourceBergen Corporation ("Amerisource") is a Delaware Corporation with its principal place of business in Chesterbrook, Pennsylvania.

60.     Defendant Amerisource does substantial business in the State of Ohio and the City of Sandusky.

61.     Upon information and belief, Defendant Amerisource is a pharmaceutical distributor licensed to do business in the State of Ohio.

62.     Defendant Amerisource distributes pharmaceuticals to retail pharmacies and institutional providers to customers in all 50 states, including Ohio and the City of Sandusky.

63. Upon information and belief, defendant Amerisource is one of the largest distributors of opioid pain medications in the Country, including the State of Ohio and the City of Sandusky.

64. The three pharmaceutical distributor defendants (hereinafter "Distributor Defendants") are three of the largest opioid distributors in the Country, the State of Ohio, and within the City of Sandusky.

65. The Distributor Defendants purchased opioids from manufacturers, such as the named defendants herein, and sold them to pharmacies throughout Sandusky.

66. The Distributor Defendants played an integral role in the chain of opioids being distributed throughout the City of Sandusky.

67. Pursuant to Section 4729-9 of the Ohio Administrative Code, entitled "Dangerous Drugs", distributors/wholesalers such as the defendants are required to create record keeping, including establishing and maintaining inventories and records of all transactions of dangerous drugs such as opioid pain medications. Pursuant to section (1) "[T]he wholesaler shall inform the state board of pharmacy of suspicious orders for drugs when discovered. Suspicious orders are those which, in relation to the wholesaler's records as a whole, are of unusual size, unusual frequency, or deviate substantially from established buying patterns."

68. The Distributor Defendants were each on notice that the controlled substances they distributed or prescribed were the kinds that were susceptible to diversion for illegal purposes, abused, overused, and otherwise sought for illegal, unhealthy and problematic purposes.

22

69.     The Distributor Defendants were each on notice that there was an alarming and suspicious rise in distributing opioids to retailers within the State of Ohio, the Erie County and the City of Sandusky.

70.     As entities involved in the distribution of opioid medications, Distributor Defendants were engaged in abnormally and/or inherently dangerous activity and had a duty of care under Ohio law.

71.     The Distributor Defendants had a duty to notice suspicious or alarming orders of opioid pharmaceuticals and to report suspicious orders to the proper authorities and governing bodies including the DEA and the Ohio State Board of Pharmacy.

72.     The Distributor Defendants knew or should have known that they were supplying vast amounts of dangerous drugs to the City of Sandusky that were already facing abuse, diversion, misuse, and other problems associated with the opioid epidemic.

73.     According to the Ohio Department of Health, "from 1999 to 2007 in Ohio, there were increases of 304 percent and 325 percent respectively in the unintentional drug poisoning death rate and total grams of prescription opioids distributed per 100,000 population."

74.     Comparing 1997 to 2011 creates even more startling results. In 1997, distribution of OxyCodone to retail pharmacies in Ohio was under 4,000 grams per 100,000. By 2011, this number jumped to nearly 28,000 grams per 100,000.

75.     The Distributor Defendants failed in their duty to take any action to prevent or reduce the distribution of these drugs from at least 2007 through the present time.

76.     The Distributor Defendants were in a unique position and had a duty to inspect, report, or otherwise limit the flow of these drugs in the City of Sandusky.

77.    The Distributor Defendants, in the interest of their own massive profits, intentionally failed in this duty.

78,    The Distributor Defendants have displayed a continuing pattern of failing to submit suspicious order reports.

79.    In 2008, McKesson paid a $13.2 million fine to settle similar claims regarding suspicious orders from internet pharmacies.

80.    Despite these prior penalties, McKesson's pattern of failing to report suspicious orders continued for many years.

81.    According to the DEA, McKesson "supplied various U.S. pharmacies an increasing amount of oxycodone and hydrocone pills" during the time in question, and "frequently misused products that are part of the current opioid epidemic."

82.    On January 17, 2017, the DEA announced that McKesson had agreed to pay a record $150 million fine and suspend the sale of controlled substances from distribution centers in several states.

83.    In 2008, defendant Cardinal paid a $34 million penalty to resolve allegations that it failed to report suspicious opioid orders.

84.    Despite this past penalty, in 2017, it was announced that Defendant Cardinal agreed to a $44 million fine to "resolve allegations that it failed to alert the Drug Enforcement Agency to suspicious orders of powerful narcotics by pharmacies in Florida, Maryland and New York.

85.    Defendant Amerisource faced a criminal inquiry "into its oversight of painkiller sales" in 2012. They have paid out fines for similar claims to the State of West Virginia.

86. Despite the charges, fines, and penalties brought against the Distributor Defendants in the past, they continued to fail to report suspicious orders or prevent the flow of prescription opioids, including into the City of Sandusky.

87. The Distributor Defendants are also members of the Healthcare Distribution Management Association ("HDMA"). The HDMA created "Industry Compliance Guidelines" which stressed the critical role of each member of the supply chain in distributing controlled substances. The HDMA guidelines provided that "[a]t the center of a sophisticated supply chain, Distributors are uniquely situated to perform due diligence in order to help support the security of controlled substances they deliver to their customers."

88. Between the years in question, including 2007 through 2016, the Distributor Defendants shipped millions of doses of highly addictive controlled opioid pain killers into the City of Sandusky.

89. Many of these orders should have been stopped, or at the very least, investigated as potential suspicious orders.

90. The sheer volume of the increase in opioid pain medications, including OxyCodone, being distributed to retailers, should have put the Distributor Defendants on notice to investigate and report such orders.

91. The Distributor Defendants delivered an excessive and unreasonable amount of opioid pain medications to retailers in the City of Sandusky.

92. Upon information and belief, the Distributor Defendants did not refuse to ship or supply any opioid medications to any pharmacy within the City of Sandusky from 2007 to the present.

93.     The Defendant Distributors knew or should have known that they were distributing levels of opioid medications that far exceeded the legitimate needs of the City of Sandusky.

94.     The Defendant Distributors also paid their sales force bonuses and commissions on the sale of most or all of the highly addictive opioid pain medications with the City of Sandusky.

95.     The Distributor Defendants made substantial profits from the opioids sold in the City of Sandusky.

96.     The Distributor Defendants violated Ohio State Board of Pharmacy rules, codes and regulations for distributors by failing to properly report suspicious orders.

97.     By the actions and inactions described above, the Distributor Defendants showed a reckless disregard for the safety of the residents of the City of Sandusky.

98.     By the actions and inactions described above, the Distributor Defendants caused great harm to the City of Sandusky.

99.     Russell Portenoy, M.D., is an individual residing in New York.  Defendant Dr. Portenoy is a physician licensed to practice medicine in the state of New York.  Dr. Portenoy was instrumental in promoting opioids for sale and distribution nationally and in the City of Sandusky.

100.    Perry Fine, M.D., is an individual residing in Utah.  Dr. Fine was instrumental in promoting opioids for sale and distribution nationally and in the City of Sandusky.

101.    Scott Fishman, M.D., is an individual residing in California.  Dr. Fishman was instrumental in promoting opioids for sale and distribution nationally and in the City of Sandusky.

102.    Lynn Webster, M.D., is an individual residing in Utah.   Dr. Webster was instrumental in promoting opioids for sale and distribution nationally and in the City of Sandusky.

## FIRST CAUSE OF ACTION

### PUBLIC NUISANCE
### OHIO PRODUCT LIABILITY ACT ("PLA")
### OHIO REVISED CODE CHAPTER 2307.71 et seq. AND COMMON LAW
### (AGAINST ALL DEFENDANTS)

103.    Plaintiff incorporates the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

104.    Defendants, individually and acting through their employees and agents, and in concert with each other, have intentionally, recklessly, or negligently engaged in conduct or omissions which endanger or injure the property, health, safety or comfort of a considerable number of persons in Sandusky by their production, promotion, and marketing of opioids for use by residents of Sandusky.

105.    Defendants' conduct is not insubstantial or fleeting.  It has caused deaths, serious injuries, and a severe disruption of public peace, order and safety; it is ongoing, and it is producing permanent and long-lasting damage.

106.    Defendants' conduct constitutes a public nuisance.

107.    Defendants' conduct directly and proximately caused injury to Plaintiff and its residents.

108.    Plaintiff and its residents suffered special injuries distinguishable from those suffered by the general public.

27

## SECOND CAUSE OF ACTION

### FRAUD
### (AGAINST ALL DEFENDANTS)

109.    Plaintiff incorporates the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

110.    Defendants, individually and acting through their employees and agents, and in concert with each other, made misrepresentations and omissions of facts material to Plaintiff and its residents to induce them to purchase, administer, and consume opioids as set forth in detail above.

111.    Defendants knew at the time that they made their misrepresentations and omissions that they were false.

112.    Defendants intended that Plaintiff and its residents would rely on their misrepresentations and omissions.

113.    Plaintiff and its residents reasonably relied upon Defendants' misrepresentations and omissions.

114.    The Defendants' intentionally did not alter or correct the disseminated information they knew to be fraudulent.

115.    By reason of their reliance on Defendants' misrepresentations and omissions of material fact Plaintiff and its residents suffered actual pecuniary damage.

116.    Defendants' conduct was willful, wanton, and malicious and was directed at the public generally.

### THIRD CAUSE OF ACTION

#### UNJUST ENRICHMENT
#### (AGAINST ALL DEFENDANTS)

117. Plaintiff incorporates the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

118. As an expected and intended result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from opioid purchases made by Plaintiff and its residents.

119. In exchange for the opioid purchases, and at the time Plaintiff and its residents made these payments, Plaintiff and its residents expected that Defendants had provided all of the necessary and accurate information regarding those risks and had not misrepresented any material facts regarding those risks.

120. Defendants have been unjustly enriched at the expense of Plaintiff.

### FOURTH CAUSE OF ACTION

#### NEGLIGENCE
#### (AGAINST DISTRIBUTOR DEFENDANTS)

121. Plaintiff incorporates the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

122. Distributor Defendants have a duty to exercise reasonable care in the distribution of opioids.

123. Distributor Defendants breached this duty by failing to take any action to prevent or reduce the distribution of the opioids.

124. As a proximate result, Distributor Defendants and its agents have caused Sandusky to incur excessive costs related to diagnosis, treatment, and cure of addiction or risk of addiction to opioids, the City has borne the massive costs of these illnesses and conditions by having to provide necessary medical care, facilities, and services for treatment of City residents.

125. Distributor Defendants were negligent in failing to monitor and guard against third-party misconduct and participated and enabled such misconduct.

126. Distributor Defendants were negligent in disclosing to Sandusky suspicious orders for opioids pursuant to the aforementioned Ohio statues.

127. Distributor Defendants' acts and omissions imposed an unreasonable risk of harm to others separately and/or combined with the negligent and/or criminal acts of third parties.

128. Distributor Defendants are in a class of a limited number of parties that can legally distribute opioids, which places it in a position of great trust by the City.

129. The trust placed in Distributor Defendants by Sandusky through the license to distribute opioids in Sandusky creates a duty on behalf of Distributor Defendants to prevent diversion of the medications it supplies to illegal purposes.

130. A negligent and/or intentional violation of this trust poses distinctive and significant dangers to the City and its residents from the diversion of opioids for non-legitimate medical purposes and addition to the same by consumers.

131. Distributor Defendants were negligent in not acquiring and utilizing special knowledge and special skills that relate to the dangerous activity in order to prevent and/or ameliorate such distinctive and significant dangers.

132. Distributor Defendants are required to exercise a high degree of care and diligence to prevent injury to the public from the diversion of opioids during distribution.

133.    Distributor Defendants breached their duty to exercise the degree of care, prudence, watchfulness, and vigilance commensurate to the dangers involved in the transaction of its business.

134.    Distributor Defendants are in exclusive control of the management of the opioids it distributed to pharmacies and drug stores in Sandusky.

135.    Sandusky is without fault and the injuries to the City and its residents would not have occurred in the ordinary course of events had Distributor Defendants used due care commensurate to the dangers involved in the distribution of opioids.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants, jointly and severally, as to the FIRST, SECOND, THIRD, AND FOURTH Causes of Action, awarding Plaintiff in amounts likely to exceed $25,000:

i.      compensatory damages in an amount sufficient to fairly and completely compensate Plaintiff for all damages;

ii.     Punitive Damages;

iii.    Interest, Costs, and Disbursements;

iv.     Such and further relief as this Court may deem just and proper;

v.      That the Court order such other and further relief as the Court deems just.

Respectfully submitted,

/s/Leslie O. Murray
Leslie O. Murray  (0081496)
Leslie@murrayandmurray.com
John T. Murray  (0008793)
jotm@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky, Ohio  44870-2517
Telephone:  (419) 624-3125
Facsimile: (419) 624-0707

Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues.

/s/Leslie O. Murray
Leslie O. Murray  (0081496)
MURRAY & MURRAY CO., L.P.A.

Attorney for Plaintiff

## PRAECIPE TO THE CLERK

Please serve Defendant by certified mail, return receipt requested, at the address

appearing on the face of the complaint.

/s/Leslie O. Murray
Leslie O. Murray  (0081496)
MURRAY & MURRAY CO., L.P.A.

Attorney for Plaintiff